| |
|---|
| **Telefonica S.A. v Millicom Intl. Cellular S.A.** |
| 2024 NY Slip Op 30478(U) |
| February 13, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 651838/2020 |
| Judge: Andrew Borrok |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  COMMERCIAL DIVISION PART 53

-----------------------------------------------------------------------------------X

TELEFONICA S.A.,

Plaintiff,

- v -

MILLICOM INTERNATIONAL CELLULAR S.A., MILLICOM SPAIN S.L.

Defendant.

-----------------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 651838/2020 |
| **MOTION DATE** | 02/24/2023, 02/24/2023 |
| **MOTION SEQ. NO.** | 007 008 |

**DECISION + ORDER ON MOTION**

HON. ANDREW BORROK:

The following e-filed documents, listed by NYSCEF document number (Motion 007) 351, 352, 353, 354, 355, 356, 357, 358, 359, 360, 361, 362, 363, 364, 365, 366, 367, 368, 369, 370, 371, 372, 373, 374, 375, 376, 377, 378, 379, 380, 381, 382, 383, 384, 385, 386, 387, 388, 389, 390, 391, 392, 393, 394, 395, 396, 397, 398, 399, 400, 401, 402, 403, 404, 405, 406, 407, 408, 409, 410, 411, 412, 413, 414, 415, 416, 417, 418, 419, 420, 421, 422, 423, 424, 425, 426, 681, 682, 683, 684, 685, 686, 692, 693, 694, 695, 696, 697, 715

were read on this motion to/for          PARTIAL SUMMARY JUDGMENT          .

The following e-filed documents, listed by NYSCEF document number (Motion 008) 427, 428, 429, 430, 431, 432, 433, 434, 435, 436, 437, 438, 439, 440, 441, 442, 443, 444, 445, 446, 447, 448, 449, 450, 451, 452, 453, 454, 455, 456, 457, 458, 459, 460, 461, 462, 463, 464, 465, 466, 467, 468, 469, 470, 471, 472, 473, 474, 475, 476, 477, 478, 479, 480, 481, 482, 483, 484, 485, 486, 487, 488, 489, 490, 491, 492, 493, 494, 495, 496, 497, 498, 499, 500, 501, 502, 503, 504, 505, 506, 507, 508, 509, 510, 511, 512, 513, 514, 515, 516, 517, 518, 519, 520, 521, 522, 523, 524, 525, 526, 527, 528, 529, 530, 531, 532, 533, 534, 535, 536, 537, 538, 539, 540, 541, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553, 554, 555, 556, 557, 558, 559, 560, 561, 562, 563, 564, 565, 566, 567, 568, 569, 570, 571, 572, 573, 574, 575, 576, 577, 578, 579, 580, 581, 582, 583, 584, 585, 586, 587, 588, 589, 590, 591, 592, 593, 594, 595, 596, 597, 598, 599, 600, 601, 602, 603, 604, 605, 606, 607, 608, 609, 610, 611, 612, 613, 614, 615, 621, 622, 623, 624, 625, 626, 627, 628, 629, 630, 631, 632, 633, 634, 635, 636, 637, 638, 639, 640, 641, 642, 643, 644, 645, 646, 647, 648, 649, 650, 651, 652, 653, 654, 655, 656, 657, 658, 659, 660, 661, 662, 663, 664, 665, 666, 667, 668, 669, 670, 671, 672, 673, 674, 675, 676, 677, 678, 679, 680, 698, 699, 700, 701, 702, 703, 704, 714

were read on this motion to/for          SUMMARY JUDGMENT(AFTER JOINDER          .

Upon the foregoing documents, Telefonica's motion for partial summary judgment is granted

and Millicom's motion for summary judgment is denied.  The record before the Court and the

parties' most recent submissions firmly establish that Millicom's litigation position that an

**651838/2020   TELEFONICA S.A. vs. MILLICOM INTERNATIONAL**
Motion No.  007 008

**Page 1 of 6**

1 of 6

endorsement of this transaction is a closing condition of this transaction is just that – a litigation position.

The SPA makes no mention of the word Refrendo or endorsement (*see* NYSEC Doc. No. 356). What is required by the SPA is obtaining the Autorizacion of the Comptroller. However, as discussed in prior decisions, when the parties sought Autorizacion of the Comptroller, the parties were informed that it is the Sutel (the competition agency) and not the Comptroller who gives Autorizacion. The Comptroller subsequently gives an endorsement. Thus, on the face of the SPA, no Autorizacion of the Comptroller was required to consummate the transaction – the Comptroller does not do that act.

Section 5.1(b) of the SPA defines "Regulatory Approval" as those approvals which the parties would use their best efforts to procure and included those approvals required to consummate the transactions contemplated by the SPA (*i.e.*, approvals required before closing):

> Without limiting the generality of Section 5.4(a), Purchaser and Seller shall use their reasonable best efforts to obtain any action, approval, authorization, clearance, order, Permit or waiver of all Governmental Authorities required to consummate the transactions contemplated in this Agreement, including but not limited to the Closing Regulatory Approval (each a "Regulatory Approval")

(NYSCEF Doc. No. 356, § 5.4[b]).

Section 6.1 of the SPA provides that these Regulatory Approvals are only those approvals "permitted by applicable law:"

> Conditions to the Parties' Obligations. Subject to Section 2.3, the respective obligation of each Party to consummate the transactions contemplated hereby is subject solely to the satisfaction or waiver, ***to the extent permitted by applicable Law***, on or prior to the Closing Date of the following conditions:

**651838/2020   TELEFONICA S.A. vs. MILLICOM INTERNATIONAL**
**Motion No.  007 008**

**Page 2 of 6**

2 of 6

(a) the Regulatory Approvals set forth in Section 6.1 of the Disclosure Schedule (the "Closing Regulatory Approvals"), shall be in full force and effect and any related waiting periods required by Law shall have expired or been terminated.

(b) No Governmental Authority shall have enacted, issued, promulgated, enforced or entered any Law or Order that is in effect and would (i) make the Closing illegal or (ii) otherwise prohibit or enjoin the Closing

(*Id.*, § 6.1[a]-[b] [emphasis added]). Thus, on the face of the SPA, to the extent that the Comptroller does not grant Autorizacion, Millicom was not entitled to claim this act as a closing condition that did not occur because this is not a Closing Regulatory Approval that is available or permitted by applicable law.

In any event, when the parties learned that the Comptroller does not grant an Autorizacion, the parties jointly demonstrated through their conduct that they interpreted the SPA to mean that the reference in the SPA to Autorizacion meant that obtaining an endorsement from the Comptroller was appropriate.[1] As discussed above, first, the parties went to the Comptroller to seek its Autorizacion. Then, when they learned that Autorizacion was granted by the Sutel (and not the Comptroller) the parties first obtained the Sutel's Autorizacion and then the other government authorizations required under the SPA. At that point, the parties themselves then sought endorsement from the Comptroller and agreed to work together to obtain the Comptroller's endorsement.

Having agreed to this course of conduct with Telefonica, Millicom could not then subvert the parties' agreed conduct by unilaterally declining to sign an addendum to the SPA and declaring a

---

[1] The parties both agree that they SPA was not amended by conduct.

**651838/2020   TELEFONICA S.A. vs. MILLICOM INTERNATIONAL**
**Motion No.  007 008**

**Page 3 of 6**

failure of condition to avoid their obligation to close.[2] That is, the parties themselves through their conduct chose to interpret the SPA to mean that Autorizacion included obtaining all approvals for the transaction <u>including</u> the endorsement of the Comptroller <u>when it became apparent that the parties' initial understanding of what was required as to government approvals was not in fact correct</u>. Having mutually agreed that obtaining the endorsement was appropriate, Millicom could not then arbitrarily and opportunistically enforce an end date of May 2020, especially when Telefonica offered (arguably gratuitously) additional compensation to extend the

---

[2] The SPA does not contain a definition for the term "Autorizacion." In the initial briefing of the competing summary judgment motions, the parties did not address whether there was agreement on the definition of the term Autorizacion. The Court asked for a supplemental Joint Rule 19-A Submission addressing:

(1)     What is the simple definition as translated of the words "autorizacion" and "referendo" (which term does not appear in the SPA). The parties must agree to a source for the definition – i.e., a single dictionary for translation.
(2)     Inasmuch as the Sutel looks at antitrust concerns and the Comptroller seems to endorse whether all approvals are in place, can an endorsement be obtained pre-transfer or does the Comptroller require consummation of the transaction subject to endorsement?
(3)     What is the legal effect if no endorsement is procured?

In response to the first question, the parties agreed on the Royal Spanish Academy's Spanish Language Dictionary. However, the parties do not agree as to whether this was the correct source to understand the definition. Telefonica asserts that the dictionary definition indicates that Autorizacion means the "act and effect of authorizing" or "the act of an authority by which someone is given permission to act where otherwise prohibited." Referendo means the "act and effect of endorsing." These are two wholly separate terms with different temporal meanings. One ex ante. One post. Telefonica asserts that the term was intentionally used in the SPA, that that they specifically avoided using the term Referendo to avoid exactly the situation here. Millicom's position is that under its technical meaning (*i.e.*, as opposed to its plain meaning) under Costa Rica law, Autorizacion means the effect of authorizing or giving or recognizing the ability to do so something and Refrendo means corroborating something by affirming it. Thus, they claim the term Autorizacion is broad and inclusive of obtaining an endorsement.

As to the second question, the parties did not agree on a response. Telefonica's position was that a Comptroller's endorsement had not been done before under Costa Rica's General Law of Telecommunications and it is not clear whether it would have been done here. Telefonica also asserts that the endorsement ultimately was never submitted because Millicom refused to sign the needed addendum to the SPA. Millicom's response is that this has happened pre-transfer albeit under a different Costa Rican law. Millicom claims that Telefonica understood that this could be done pre-transfer, which is why they offered money to extend the end date of the SPA from May 2020 to September 2020.

As to the third question, the parties agree that if no endorsement is ultimately procured the addendum changing the parent guarantor would not be legally effective under Costa Rican law, thus Telefonica could be guaranteeing something it no longer owned.

The parties agree that this presents an issue of contract interpretation for the Court.

**651838/2020   TELEFONICA S.A. vs. MILLICOM INTERNATIONAL**                                                    **Page 4 of 6**
**Motion No.  007 008**

[* 4]

end date to September 2020. Thus, Telefonica's motion for partial summary judgment is granted and Millicom's motion is denied.

Telefonica is entitled to prejudgment interest from the closing date – *i.e.*, the earliest ascertainable date the cause of action for breach existed (CPLR 5001[b]) and it is entitled to prejudgment interest on the full contract price (not just $62 million) up until the date of the replacement transaction – *i.e.*, the time of mitigation (*Trehan v. Truli,* 2016 WL 67775501 [S.D.N.Y August 23, 2016]). Although compensatory damages are equal to the difference in the contract price and the fair market value (*Emposimato v. CIFC Acquisition Corp.,* 89AD.3d 418 [2011]) and, as Millicom submits in its papers, "[b]oth experts agree that the damages start with the difference between the Millicom deal price and the replacement deal (Liberty) price" (NYSCEF Doc. No. 615, p. 24 *citing* Kruskol ¶¶ 74-84, Floyd at 16), this amount is not sufficient to compensate Telefonica for the "inability to use the funds that the defendants should have returned" (*Trehan,* at *1-2).[3] As such, Telefonica can submit judgment including

---

[3] *Trehan* involved a breach of contract stemming from an agreement to invest the plaintiff's money in certain art for $550,000. The plaintiff made a demand for repayment. The defendant promised to sell paintings at auction to be able to pay the money back. Neither the auction nor repayment occurred. The plaintiff then sued and the defendant defaulted. The matter was subsequently referred for inquest to determine damages. As to compensatory damages, the court recommended that the plaintiff's damages were equal to the difference between the $550,000 obligation and the value of paintings the plaintiff was delivered to it (*i.e.*, $215,100) or $334,900. The court declined to recommend the award of lost profits damages because the assertion that the art was rising in value was too speculative. As relevant, however, on the issue of prejudgment interest, the court recommended that (i) prejudgment interest runs from the "earliest ascertainable date the cause of action existed until the date of the judgment" relying on CPLR 5001(b) and that (ii) Trehan was entitled to prejudgment interest on the entire $550,000 and not just the $334,000, reasoning:

> [N]otwithstanding the receipt of the two paintings, Trehan has not had use of his $550,000 since that date. The value of the paintings is sufficient to reduce the damages the defendants must pay, but it is not sufficient to compensate Trehan for his inability to use the funds that the defendants should have returned to him. Accordingly, the Court should award Trehan nine percent annual interest on the full amount due, $550,000, from March 22, 2010, until the date judgment is entered

(*Trehan,* WL 6775501 at *5). To the extent that Millicom relies on *Emposimato* to limit prejudgment interest, the case is inapposite. As discussed above, it addresses the amount of damages which, in this case, the parties do not dispute.

**651838/2020   TELEFONICA S.A. vs. MILLICOM INTERNATIONAL**
**Motion No.  007 008**

**Page 5 of 6**

[* 5]

compensatory damages on the difference between the contract price and the replacement

transaction price and including prejudgment interest on the entire contract amount up until the

replacement transaction occurred.

The Court has considered the parties remaining arguments and finds them unavailing.

Accordingly, it is hereby

ORDERED that Plaintiff's motion for partial summary judgment is granted and the Plaintiff may

submit judgment on notice; and it is further

ORDERED that Defendants' motion for summary judgment is denied.

20240213155819AD0RR0K3A55700C1247492787311 4B10EE5F07A

__2/13/2024__
__DATE__

| CHECK ONE: | X | CASE DISPOSED | | | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|---|
| | X | GRANTED | | DENIED | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | REFERENCE |

651838/2020   TELEFONICA S.A. vs. MILLICOM INTERNATIONAL
Motion No.  007 008

Page 6 of 6

6 of 6

[* 6]